UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| MICHAEL L. DEW, | } | CASE NO.: 06-40154-JJR-13 |
| | } | |
| Debtor, | } | CHAPTER: 13 |
| | } | |
| In re: | } | |
| | } | |
| PAUL A. and BETTY M. ETRESS, | } | CASE NO.: 06-40134-JRR-13 |
| | } | |
| Debtors, | } | CHAPTER: 13 |
| | } | |
| In re: | } | |
| | } | |
| APRIL L. WILSON | } | CASE NO.: 05-44792-JJR-13 |
| | } | |
| Debtor, | } | CHAPTER: 13 |
| | } | |
| In re: | } | |
| | } | |
| TONETT S. WELLS, | } | CASE NO.: 06-40207-JJR-13 |
| | } | |
| Debtor, and | } | CHAPTER: 13 |
| | } | |

### MEMORANDUM OPINION

The above cases came before this Court for confirmation of the respective Debtors' chapter 13 plans.[1]  All these cases were filed after the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective. The chapter 13 Trustee filed an Objection to Confirmation in respect to each proposed plan.  This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(b).  This is a core proceeding in accordance

---

[1] The same attorney represents all the above Debtors.  The Trustee's Objections to Confirmation of the plans proposed in these cases raise common issues, and the Trustee and Debtors' attorney combined their arguments and briefs on these issues.  Accordingly, the Court is issuing this memorandum opinion covering the common issues in these cases.

with 28 U.S.C. § 157(b).

THE PROPOSED PLANS, SCHEDULES I & J AND FORMS B22C

To fully analyze the issues presented, it is helpful to first examine some of the details of the proposed plans. In his plan, Debtor Dew proposes to pay $140 per week (increasing to $202.00 per week in June 2006) for 15 months. The payments will be applied exclusively to priority claims, attorney's fees and delinquent income taxes; general unsecured creditors will receive nothing. Dew proposes to pay a $1,000 secured claim directly to a secured creditor with monthly payments of $268.00. On Schedule J, Dew reports total monthly income of $3,243.33 (line 20 a) and total monthly expenses of $2,635.00 (line 20 b), leaving monthly net income of $608.33 (line 20 c). The Trustee asserts that Dew's plan should not be confirmed because the length of its proposed commitment period is less than three years, and he is not offering to contribute all his monthly net income to the plan payments.[2]

Debtor Wilson proposes to pay $100.00 per month for 21 months. The plan is unclear as to how Wilson intends for her payments to be applied. Her attorney's fees are $1,800.00, and she has scheduled a student loan as a priority claim in the amount of $9,301.56. While her student loan might not be discharged under section 522(a)(8) of the Bankruptcy Code (11 U.S.C. §§ 101 *et seq*, the "Bankruptcy Code" and the "Code"), it does not appear to be entitled to priority claim status under section 507 of the Code, as alleged by this Debtor. The total amount she proposes to pay over the life of the plan is only $2,100.00, significantly less than the fees of her attorney and her student loan. In any event, general unsecured creditors will receive nothing. On Amended Schedule J,

---

[2]The Trustee assigned addition reasons for her objection to confirmation of Dew's plan, including that his budget (i.e. expenditures) is excessive. This opinion only speaks to the objections based on the insufficient duration of the plan's commitment period and the Trustee's claim that Dew's budget is excessive.

Wilson reports total monthly income of $1,135.53 and total monthly expenses of $1,035.00, leaving monthly net income of $100.53. Like her objection to Dew's plan, the Trustee objects to confirmation of Wilson's plan on the grounds that it proposes payments over a term of less than three years.

The Etress Debtors propose to pay $232.00 per month for 36 months. The payments will be applied exclusively to their attorney's fees and the secured claim of the creditor holding a security interest in their automobile; general unsecured creditors will receive nothing. Schedule J discloses the Etress Debtors have total monthly income of $2,737.54 and total monthly expenses of $1,500.00, leaving monthly net income of $1,237.54.

Debtor Wells proposes to pay $1,008.00 per month plus $240.10 bi-weekly for 60 months. The payments will be applied exclusively to her attorney's fees and the secured claims of the creditors holding security interests in her home and automobile; general unsecured creditors will receive nothing. Schedules J discloses that Wells has total monthly income of $3,832.17 and total monthly expenses of $1,004.00, leaving monthly net income of $2,828.17.

All the Debtors included Forms B22C with their petitions for relief. Interim Rule 1007(b)(6) of the Federal Rules of Bankruptcy Procedure requires a chapter 13 debtor to report his or her current monthly income in Part I of Official Form B22C, and in Part II to determine whether or not this income is less or more than the median family income for the debtor's state and household size. If the income is greater than the applicable median, then disposable income must be calculated in accordance with section 1325(b)(3) of the Code by completing Parts III, IV and V of Form B22C. If income is less than the median, the instructions in line 14 of the Form tell the debtor not to complete the remainder of the Form other than the verification in Part VI.

In Part II of their Forms B22C, all of the Debtors in these cases reported that their current

monthly income was less than the median income for their applicable family size in Alabama. Nonetheless, contrary to the instruction in line 14, they each completed the entire Form B22C, including Parts III, IV and V. The calculations of disposable income in Forms B22C, as completed by the Debtors, leave each of them with negative monthly disposable income (i.e. Form B22C line 48).[3]

## WHY CHAPTER 13 AND NOT CHAPTER 7?

Without making a detailed analysis, it appears from these Debtors' Schedules and Forms B22C, that all of them were eligible to seek relief under chapter 7 of the Bankruptcy Code with no presumption of abuse under section 707(b). If they had filed under chapter 7 most, and in some cases all, their debts would be dischargeable without further payment. So why did they file under chapter 13 which will require payments to the Trustee under a plan? The answer is simple. As is often the situation, a debtor files for relief under chapter 13 rather than 7 to cure outstanding defaults in secured debts such as home mortgages and automobile loans. This allows a chapter 13 debtor to take advantage of the automatic stay while curing defaults in secured debts and stop foreclosures and repossessions. It also halts the imposition of judgments and their enforcement through levy, execution and garnishment. At the end of a successful and completed chapter 13 plan, a debtor hopes to have cured defaults in his or her secured debts, and receive a discharge of general unsecured debts, even if these latter debts were not fully, or even partially paid under the plan.

Another example of why a debtor may choose chapter 13 and not 7 arises when a debtor finds

---

[3] Even ignoring that these Debtors all have below median income, they failed to properly complete Parts III, IV and V of their Forms B22C. For example, most of the line item deductions allowed in Part III were left blank, no total deductions were inserted in lines 42, and it was impossible to reconcile the total of all allowed deductions on lines 46. Additionally, Debtors Dew and Wilson inserted the total amount of their proposed priority claims in line 39 without dividing that amount by 60 as instructed. Nonetheless, for the purposes of this opinion any errors in completion of Forms B22C will be ignored, and it will be assumed that all these Debtors would have negative monthly disposable income reported on line 48 if the form had been accurately completed.

that his or her exemptions are not sufficient to protect the unencumbered value in property the debtor desires to retain. This property would otherwise be subject to liquidation by a trustee in a chapter 7 case. Similarly, a debtor might have debts that would not be discharged under chapter 7, but under chapter 13 he can pay these debts over an extended period of time, thus avoiding harsh collection remedies that might be employed by creditors holding nondischargeable claims, e.g. domestic support obligations, delinquent income taxes and student loans. While the motives of the Debtors in these cases are not at issue, it appears that in most instances they are attempting to cure defaults in secured loans (e.g. Wells and Estress), and avoid or delay the enforcement of nondischarageable debt (Dew and Wilson). However, at the conclusion of their plans, these Debtors expect to receive a full discharge from the claims of their nonpriority, unsecured creditors, even though these creditors will receive nothing.

## PLAN COMMITMENT PERIODS AND
## PROJECTED DISPOSABLE INCOME FOR BELOW MEDIAN DEBTORS

Debtors Dew and Wilson propose plans with terms of less than three years. The term of Wilson's plan is 21 months, and Dew's is only 15 months, and neither plan proposes to pay anything to nonpriority, unsecured creditors. The Trustee contends that the Wilson and Dew plans cannot be confirmed over her objection because they do not satisfy the requirements of section 1325(b)(1) of the Bankruptcy Code. Section 1325(b)(1) states that when the trustee or a holder of an allowed unsecured claim objects to the confirmation of a chapter 13 plan, "then the court may not approve the plan unless . . .

> (A) the value off the property to be distributed under the plan on account of such claim is not less than the amount of such claim [i.e. pay the claim in full]; or
>
> (B) the plan provides that all the debtor's *projected disposable income* to be

received in the *applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." (emphasis added).

The Trustee then points to section 1325(b)(4), which defines "applicable commitment period" as three years for below median income debtors. She argues that because the Dew and Wilson plans are for periods of less than three years, they should not be confirmed.

Debtors Dew and Wilson contend that the duration or length of their plans is immaterial since they have no monthly disposable income reported on line 48 of their Forms B22C. According to Dew and Wilson, because they have no obligation to pay anything under Form B22C, the duration of their plans is of no consequence.

Section 1325(b)(2) provides that "disposable income" is determined by subtracting from "current monthly income[4]" the reasonably necessary expenses incurred for the maintenance and support of the debtors and their dependants, charitable contribution (within limits), and if the debtors are engaged in business, necessary business expenses. Thus, a debtor's current monthly income is the starting point for determining his disposable income under section 1325(b)(2). However, current monthly income is also important for two other reasons: (1) selecting the method for determining the expenses that will be subtracted from current monthly income to calculate disposable income, and (2) selecting the term or duration for debtor's plan, i.e. the applicable commitment period. If current monthly income, multiplied by 12, is greater than the applicable median, then the deductible expenditures for the calculation of disposal income are determined in accordance with section 707(b)(2)(A)&(B). Code § 1325(b)(3). Likewise, if the debtor's current monthly income, multiplied

---

[4]Generally speaking, current monthly income is defined in Code § 101(10A) as the average monthly income from all sources received by the debtor(s) during the six calender months immediately preceding the month in which the petition was filed.

by 12, is greater than the applicable median, then the applicable commitment period for his plan is five years, as opposed to three years for a below median income debtor. Code § 1325(b)(4). The only exception to the five and three year requirements is "if the plan provides for payment in full of all allowed unsecured claims over a shorter period." Section 1325(b)(4)(B).

For any particular debtor, disposable income in section 1325(b)(2) is not necessarily the same as projected disposable income in section 1325(b)(1)(B). See In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006). To hold otherwise would assign no meaning to the term "projected", which would be contrary to rules of statutory construction. However, exactly how and to what extent the adjective "projected" modifies disposable income is not an issue this Court needs to address before ruling on the Trustee's objections to confirmation of the Debtors' plans in these cases. It is enough to say that if a debtor's income and expenses have been relatively constant and there is no reasonable expectation of substantial changes or fluctuations (unlike the situation which arose in In re Beasley, 2006 WL 1228924, Bankr. C.D. Ill. May 8, 2006), then projected disposable income and disposable income will in virtually all, if not all cases be the same.

As mentioned above, none of these Debtors has currently monthly income greater than the applicable median income. Thus, these Debtors' disposable incomes are not to be determined under the Form B22C formula, which was taken from Code § 707(b)(2)(A)&(B). If the Form B22C formula for determining disposable income is not applicable, how should a below median income debtor's disposable income be calculated? The answer appears to be -- the old fashioned way:

> "Unlike the higher income debtor, it does not appear that Congress has mandated monthly net income as the presumptive amount debtors must pay into a chapter 13 plan, preserving judicial discretion in that respect. Accordingly, for debtors in this category one might correctly assume that the courts will continue to apply the pre-

BAPCPA approach." T. Yerbich, Consumer Bankruptcy 98 (2d ed. 2005 American Bankruptcy Institute).

This Court holds that in determining whether a below median income debtor is offering all of his projected disposable income under a plan, the first step, and in most cases the last step, is to look at the debtor's Schedules I and J. If the Schedules are accurately completed in good faith and plan payments are substantially the same as the debtor's monthly net income shown on Schedule J, then the Court will conclude that the debtor is offering his projected disposable income under his plan as required by Section 1325(b)(1)(B). If a party in interest contends that the amount of monthly net income shown on Schedule J of a below median income debtor should not be considered as the debtor's projected disposable income for the purposes of determining compliance with Code § 1325(b)(1)(B), then for this Court to approve a different amount, that party must be prepared to present credible evidence that proves monetary adjustments in exact amounts are necessary, without resorting to conjecture, opinion, speculation or hearsay. As stated above, in the overwhelming number of cases, the accurate information on Schedules I and J offered in good faith for below median income debtors will determine their "projected disposable income to be received in the applicable commitment period . . . ." Section 1325(b)(1)(B). Thus, the Debtors' "'projected disposable income' must be based upon the debtor's income during the term of the plan, not merely an average of [his or her] prepetition income." In re Hardacre, 338 B.R. at 722.

The plain meaning of section 1325(b)(4)(A) sets the applicable commitment period for below median debtors at three years. Where the words of the statute are clear and unambiguous, it should be interpreted as written. See Conn. Nat'l Bank v. Germain, 503 U.S. 249 (1992); Dodd v. U.S., 125 S. Ct. 2478 (2005). The Court is convinced that the three years referred to in section 1325(b)(4)(A) represents a period of time over which chapter 13 plan payments must be made, not a multiplier for

use in calculating the total amount to be paid under the plan regardless of its term. The hanging paragraph at the end of Code § 1322(d)(2) states "the plan [of a below median income debtor] may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period," not to exceed five years. A plan modification made pursuant to section 1329(c) "may not provide for payments over a *period that expires* after the *applicable commitment period* under section 1325(b)(1)(B) after the *time* that the first payment under the original confirmed plan was due, unless the court, for cause, approves a *longer period* . . . ." (emphasis added). Inasmuch as sections 1322(d)(2) and 1329(c) deal with extending the duration of a plan confirmed under section 1325, the only logical conclusion is that the applicable commitment period under section 1325(b)(4)(A) must be a period of time: either three or five years, depending on the median income of the debtor. It is impossible to read sections 1322(d)(2), 1325(b)(4)(A) and 1329(c) and conclude the Bankruptcy Code contemplates something other than a defined length of time for payments to be made under a chapter 13 plan, i.e. the applicable commitment period.[5] When a below median income debtor has positive monthly net income shown on his Schedule J, even if he would have no monthly disposable income under Form B22C, in virtually all cases an amount substantially equal to such monthly net income will be considered the debtor's projected disposable income for the purposes of Code § 1325(b)(1)(B). Thus, a plan proposed by a debtor with a commitment period of less than three years should not be confirmed over the objection of the Trustee or an unsecured creditor, unless the plan will pay unsecured creditors in full in less than three years.

---

[5]Similarly, Code § 1322(a)(4) provides for the payment of section 507(a)(1)(B) priority claims over a "5-year period," the maximum allowed term of a chapter 13 plan. Further, calculations made under Code § 1326(b)(3)(B)(ii) utilize the "number of months in the plan."

## COMMITMENT PERIODS FOR DEW'S AND WILSON'S PLANS

Over the proposed 15-month term of Debtor Dew's plan, he will pay a total of $9,100. If his commitment period is increased to three years, his total will increase to approximately $21,840.[6] Similarly, Debtor Wilson's 21-month plan will pay a total of $2,100, but if the commitment period is increased to three years, her total payout becomes $3,600.[7] Accordingly, the Trustee's objections to the plans proposed by Debtors Dew and Wilson are due to be SUSTAINED, because both plans fail to propose payments over the applicable commitment period of three years, and neither will pay unsecured creditors in full over their abbreviated terms.

## PROJECTED DISPOSABLE INCOME OFFERED BY ETRESS AND WELLS PLANS

The plan proposed by Debtor Etress has a commitment period of three years, and the Wells plan has a term of five years. The Trustee is not objecting to the length of the commitment periods of these two plans.[8] However, the Trustee contends the Etress and Wells plans do not offer to pay all the projected disposable income of their respective Debtor. A comparison of the proposed plan payments with the reported monthly net incomes on Schedule J supports the Trustee's objections to

---

[6] Dew's plan payments calculated on a monthly basis are approximately $606, and his monthly net income show on Schedule J is $608. Assuming the income and expenditures used to complete Schedules I and J are accurate and offered in good faith, it appears the proposed periodic payments would substantially comply with section 1325(b)(1)&(2) for 15 months, but the proposed commitment period of 15 months is 21 months short from that required by section 1325(b)(4)(A).

[7] Wilson's Schedule J reports monthly net income of $100. Thus if her income and expenditures used to complete her Schedules I and J are accurate and offered in good faith, it appears her monthly contribution is sufficient, but the term of the plan must be increased to three years.

[8] Section 1322(d)(2) limits the term of a below median income debtor to no more than three years unless the court, for cause, approves a longer period not to exceed five years. The Wells plan proposes a commitment period of five years, although the Debtor has not sought and the Court has not approved a longer period. This Court makes no ruling on the consequences, if any, of a commitment period extending beyond three years for a median income debtor where, as here, the Court has not approved the longer period and neither the Trustee nor any other party in interest has objected to the longer period.

confirmation.[9] Thus, the Trustee's objections to confirmation of the plans proposed by Debtors Etress and Wells are SUSTAINED, because they do not offer all of the Debtors' disposable income to be received during the applicable commitment period. Code § 1325(b)(1)(B).

Separate orders consistent with this opinion will be entered in each of these cases. The Clerk will be directed to re-schedule each case for plan confirmation and consideration of whatever proof the parties might wish the Court to review in support of, or in opposition to confirmation, consistent with the opinions expressed herein. The Debtors are granted leave to amend their proposed plans to comply with this opinion.

Dated: May 31, 2006

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[9] The Trustee contends that the budget proposed by Debtor Dew is excessive, resulting in his plan not offering to pay all his disposable income. The Court assumes the Trustee is complaining that the expenditures shown on Dew's Schedule J are excessive, and that if they were reduced to reasonable amounts there would be a corresponding increase in the monthly net income available to make payments to unsecured creditors. Without further proof, the Court makes no findings regarding the expenditures reported on Dew's Schedule J. This issue as it applies to this Debtor will be determined when a hearing on confirmation is re-scheduled.